JOHNNY DENENEA, JR.
Draft dictation in Top Catastrophe

On August 29, 2005, the now historic Hurricane Katrina made landfall in the Gulf Coast of the United States.

In anticipation of the storm's arrival and expected catastrophic damage, the defendants were poised to handle several thousands of claims throughout the coastal states.

Defendant, St. Paul Travelers Insurance Company, Inc. ("St. Paul") enlisted and contracted with National Catastrophe Adjusters, Inc. ("NCA") and Integrated Claims Solutions, L.L.C. ("ICS") to administer their insurance claims throughout the coastal areas.

Defendants, NCA and ICS, thereafter contracted with complainant, CSP, in an effort to recruit adjuster and adjusting companies in the coastal areas to handle the thousands of claims expected by the defendants, A division and subsidiary of TOP CATASTROPHE.

NCA and ICS contracted with CSP to pay CSP a five percent bonus on all [billable time/time and expense sheet/claims file] on the claims handled by the adjusters that were recruited by CSP. and TOP CATASTROPHE.

In accordance with the agreement, CSP recruited other adjusters, including Top Catastrophe, for the handling of the claims of the defendants.

Top Catastrophe, its agents, employees, and officers, were experienced in the handling of catastrophe claims and in the handling of hurricane related claims.

As a result of the recruitment of Top Catastrophe, Top Catastrophe contracted with NCA for the handling of the St. Paul claims. The fee arrangement established by the contract between Top Catastrophe and NCA provided for a 5%+T/M percentage payable to Top Catastrophe from the claims [billed out] by the adjusters employed by Top Catastrophe.

At all material times following the storm, Top Catastrophe employed [95 /214] adjusters, for which those adjusters maintained an obligation of confidentiality, non-competition, and protection of work product, the terms and conditions of said contracts are the best evidence of the agreement.

Following the immediate aftermath of the storm, and for more than two months, Top Catastrophe, its agents, adjusters, and employees, performed their work under extreme circumstances, yet NCA and ICS maintained nothing but praise and positive feedback from NCA and ICS over the handling of the claims.

Case 3:19-cv-00002-RRB   Document 1-13   Filed 01/04/19   Page 1 of 38

*As a result of the contract and agreement between NCA and Top Catastrophe, 4,279+ files were given to Top Catastrophe for handling and adjusting.

On or about November 8, 2005, Mark Lozier, Chief Executive Officer of NCA, conducted a meeting with all of the adjusters of Top Catastrophe in New Orleans, Louisiana. The meeting had been prearranged by Mr. Lozier, on behalf of NCA, to recruit the agents, employees, and adjusters of Top Catastrophe to terminate their employment relationship with Top Catastrophe in exchange for cash advances, consistent bimonthly payments, and future bonuses.

At the meeting, Mark Lozier, on behalf of NCA and ICS, misrepresented to the agents, employees, and adjusters of Top Catastrophe that they would not be paid any money or any fees on the claims for which they had worked unless they signed a new contract with NCA/ICS, and that Top Catastrophe had failed to pay them any fees or funds, when in fact NCA/ICS had not paid any funds to Top Catastrophe on the claims submitted by the agents, employees, and adjusters of Top Catastrophe.

As a result of the actions taken by NCA/ICS through its chief executive officer, Mark Lozier, almost all of the adjusters left the employ of Top Catastrophe and signed an agreement with NCA/ICS for the continued handling of the same claims for which they were handling through their employment with Top Catastrophe. (200+ Emploies)

Thereafter, and on November 17, 2005, NCA, without true cause or sincere reason, terminated the contract between NCA and St. Paul.

[That Top Catastrophe maintained a contract with NCA and its subsidiary, ICS, and directly and/or indirectly with St. Paul.]

The purported basis for the termination of the agreement and contract was stated by NCA to be substandard handling of the claims by the Top Catastrophe agents, employees, and adjusters, which were the same agents, employees, and adjusters which NCA had met with nine days earlier to contract individually with them.

At all material times following the storm, NCA and ICS worked under the authority and direction of the agents, employees, and representatives of St. Paul.

That CSP, through its agents, employees, and officers, sought to prevent the improper communication between NCA/ICS and the adjusters which were employed by Top Catastrophe through written correspondence.

NCA/ICS deliberately ignored that request and proceeded to communicate and financially coerce the agents, employees, and adjusters of Top Catastrophe to separate from their employment.

On November 18,2005,St.Paul Travelors NCA/ICS,employees were detained at the scene of a burgulary, and theft of the corporate offices of TOP CATASTROPHE,of 708 carrolton Ave. Metaire Louisana,70005.Acting on the (SUPPOSED) expressed diretion of St.Paul Travelors NCA/ICS,EXECUTIVES.

This theft was inclusive of all Data,Computers,Electronic storage equipment,and office equipment. The perpertrators were caught and detained,withthere identifications being recorded. After which they were released pending a investigation by Metaire Police.Initial Report,and detainment at the scene by Mr.GARY LANDRIEU.

The perpertrators at the scene reported to be acting on the expressed permission of NCA/ICS St.Paul Travelors,and not on any authority of TOP CATASTROPHE.

Upon the return of TOP CATASTROPHE executives,Edmond H. Smith IV and Edmond H. Smith III, A theft, and Burgulary Investigation Report was completed,and pursuant to the subsequent interviews with Detective BERGGRAN, of the Metaire Police Department,it was deemed a crime.

JOHHNY H. DENENEA JR
END DICTATION.

# United States District Court
## EASTERN DISTRICT OF LOUISIANA

CLAIMSERVICEPROVIDER, INC., ET AL

V.

THE ST. PAUL TRAVELERS COMPANIES, ET AL

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:        "        "; MAG.-

# 06 - 2475
# SECT. 1 MAG 3

TO: **The St. Paul Travelers Companies, Inc.**

through The Honorable Al Ater

Secretary of State for the State of Louisiana

3851 Essen Lane, State Archives Building

Baton Rouge, LA 70809

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address

John H. Denenea, Jr.
SHEARMAN-DENENEA, L.L.C.
4240 Canal Street
New Orleans, Louisiana 70119

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complain. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LORETTA G. WHYTE

_____
CLERK

MAY 1 1 2006

_____
DATE

_____
(BY) DEPUTY CLERK

Attachment XIII. Page 4 of 38.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLAIMSERVICEPROVIDER INC, TOP CATASTROPHE TEAM SERVICES, LLC, AND EDMOND SMITH, IV D/B/A TOP CATASTROPHE TEAM SERVICES | * | CIVIL ACTION |
| VERSUS | * | NO. 06-2475 |
| THE ST. PAUL TRAVELERS COMPANIES, INC., NATIONAL CLAIMS ADJUSTERS, INC. D/B/A NCA GROUP, INTEGRATED CLAIMS SOLUTIONS, LLC, D/B/A ICS | * | SECT."1"; MAG.- 3 |

## COMPLAINT FOR MISREPRESENTATION, UNFAIR TRADE PRACTICE, TORTUOUS INTERFERENCE WITH CONTRACT, CONVERSION, BREACH OF CONTRACT AND OPEN ACCOUNT AND NEGLIGENCE

The Complaint of Claimserviceprovider, Inc., a Delaware Corporation, ("CSP"), Top Catastrophe Team Services, LLC, a Nevada Limited Liability Company, and Edmond Smith, IV, a domiciliary of the State of Alabama d/b/a Top Catastrophe Team Services, (collectively, "Top Catastrophe") with respect represents:

## General Allegations

1

*Jurisdiction and Venue*

1.

The jurisdiction of this court is invoked under the 28 U.S.C. ᵗ 1332, commonly known as Diversity of Citizenship, as the parties listed are of diverse States and the damages claimed are in excess of $75,000.00.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to the claim occurred in this district and the property that is subject of the action is situated in this district.

*Defendants.*

3.

Made defendant herein is The St. Paul Travelers Companies, Inc. ("St. Paul"), a foreign corporation incorporated in the State of Minnesota, and licensed to do and doing business in the State of Louisiana, and capable of being sued in this State and subject to the overall jurisdiction of this District and Court.

4.

Made defendant herein is National Catastrophe Adjusters, Inc., d/b/a NCA Group, ("NCA Group") a corporation incorporated in the State of Indiana and licensed to do and doing business in the State of Louisiana and capable of being sued in this State and subject to the overall jurisdiction of this District and Court.

2

5.

Made defendant herein is Integrated Claims Solutions, LLC, d/b/a ICS, ("ICS"), a foreign corporation incorporated in the State of Indiana and licensed to do and doing business in the State of Louisiana and subject to the overall jurisdiction of this District and Court.

6.

Defendants are justly and truly indebted unto complainants, jointly and *in solido* in a full and true sum which will sufficiently compensate them for the damages, both economic and non-economic, together with legal interest thereon from the date of injury, attorneys' fees, treble damages if determined, and all costs of these proceedings, and for the following to wit:

*Facts*

*Background*

7.

On August 29, 2005, Hurricane Katrina made landfall in the Gulf Coast Region of the United States.

8.

In an effort to prepare for and respond to the anticipated insurance claims resulting from Hurricane Katrina, Defendant, St. Paul enlisted and contracted with NCA Group and ICS as its agents and representatives to administer or otherwise assist in the administration of the St. Paul insurance claims process.

9.

Defendants, NCA Group and ICS, on behalf of themselves and St. Paul, contracted with Claimserviceprovider, Inc., an adjusting firm as well as a recruiting agency for adjusters, to

3

handle claims, identify, find and recruit professional adjusters and adjusting companies in and around the Gulf Coast Region to handle the thousands of claims expected to be received by St. Paul.

10.

The general responsibility of NCA Group was the overall administration of the St. Paul claims and the adjusters, including CSP and Top Catastrophe, while ICS was responsible for the organizing, handling and data transference of the claim information and data, time and expense, and billing of the adjusters, including CSP and Top Catastrophe.

11.

At all material times herein, NCA Group and ICS were interchangeable entities both sharing the responsibilities with the claims handling, sharing the same space, using the same staff and employees, and working out of the same office location.

*The Agreements*

12.

On or about September 10, 2005 the NCA Group and ICS entered into a recruiting contract with CSP ("CSP Recruiting Agreement"). The CSP Recruiting Agreement provided, among other things, that NCA Group and ICS would pay to CSP a five percent override fee on all claims handled by the professional claims adjusters recruited and retained by CSP.

13.

Pursuant to the CSP Recruiting Agreement, CSP identified and recruited numerous adjusters and adjusting companies to work for NCA Group, ICS and St. Paul. Plaintiff, Top Catastrophe and its principals were specifically recruited by CSP to contract with and work for

4

Defendants to perform adjustment services and administer thousands of St. Paul's property insurance claims.

14.

CSP and Top Catastrophe, their agents, employees, and officers, were experienced in the handling of catastrophe claims and specifically in the handling of hurricane related claims.

15.

On or about September 10, 2005, NCA Group entered into an Independent Contractor Agreement with Top Catastrophe ("Top Catastrophe Adjuster Agreement"). The Top Catastrophe Adjuster Agreement provided that Top Catastrophe would perform adjusting services to NCA Group as an independent contractor to perform the independent adjustment of St. Paul insurance claims assigned to it by NCA Group. The contract between Top Catastrophe and NCA Group provided that NCA Group would pay to Top Catastrophe a fee of sixty-five (65%) percent of NCA Group's Adjuster Fee Basis Amount on all claims billed out by the adjusters employed by Top Catastrophe.

16.

In accordance with the Top Catastrophe Adjuster Agreement, NCA Group assigned approximately 3000 St. Paul commercial property insurance claims files to Top Catastrophe for handling and adjusting. NCA Group, ICS, and St. Paul, were intricately involved in the assignment of claims files and the administration and exchange of claims related data on the files.

17.

5

At all material times following the storm, Top Catastrophe retained dozens of professional adjusters. The adjusters entered into an exclusive employment agreement with Top Catastrophe to provide adjusting services, which agreements mandated confidentiality, non-competition, and protection of Top Catastrophe work product. The terms and conditions of said adjuster contracts were at all relevant times known and understood by Defendants.

18.

In accordance with the terms of the Top Catastrophe Adjuster Agreement, and in reliance upon the representations of NCA Group and ICS, as agents and representatives of St. Paul, Top Catastrophe expended significant funds and resources to secure the services of over fifty independent professional adjusters and provided necessary equipment, supplies, housing and other essentials to said adjusters, all for the benefit of Defendants.

19.

Additionally, and on or about October 10, 2005, NCA Group entered into an Independent Contractor Agreement with CSP, ("CSP Adjuster Agreement") to provide services to NCA Group as an independent contractor to perform the independent adjustment of St. Paul insurance claims assigned to it by NCA Group. The CSP Adjuster Agreement provided that NCA Group would pay to CSP a fee of sixty-five (65%) percent of NCA Group's Adjuster Fee Basis Amount on all claims billed out by the adjusters employed by CSP.

20.

In accordance with The CSP Adjuster Agreement, NCA Group assigned approximately 1000 St. Paul commercial property insurance claims files to CSP for handling and adjusting.

6

NCA Group, ICS, and St. Paul, were intricately involved in the assignment of claims files and the administration and exchange of claims related data on files.

21.

In accordance with the terms of the CSP Adjuster Agreement, and in reliance upon the representations of NCA Group and ICS, as agents and representatives of St. Paul, CSP expended significant funds and resources to secure the services of approximately twenty-five independent professional adjusters and provided necessary equipment, supplies, housing and other essentials to said adjusters, all for the benefit of Defendants.

22.

In accordance with the terms of the CSP Recruiting Agreement, and in reliance upon the representations of NCA Group and ICS, as agents and representatives of St. Paul, CSP expended significant funds and corporate reputation in recruiting and developing the base of adjusters, including Top Catastrophe.

23.

At all material times following the storm, CSP retained dozens of professional adjusters. The adjusters entered into an exclusive employment agreement with CSP to provide adjusting services, which agreements mandated confidentiality, non-competition, and protection of CSP work product. The terms and conditions of said adjuster contracts were at all relevant times known and understood by Defendants.

24.

Following the immediate aftermath of the storm, and for the months immediately following the storm, CSP and Top Catastrophe, their agents, adjusters, and employees,

7

performed professional adjusting services under extreme conditions in the hurricane ravaged areas of Louisiana and Mississippi, but predominantly in the Eastern District of Louisiana. NCA Group and ICS continuously praised CSP and Top Catastrophe's performance in handling the multiple complex commercial insurance claims assigned to CSP and Top Catastrophe.

25.

CSP and Top Catastrophe timely and accurately provided adjusting services and submitted time and expense billing to NCA Group and ICS in accordance with terms of their respective agreements. Defendants NCA Group and ICS, as agents and representatives of St. Paul, continuously encouraged CSP and Top Catastrophe and their professional adjusters to work long hours and submit reports to Defendants.

26.

NCA Group and ICS, as agents and representatives of St. Paul, represented to CSP and Top Catastrophe that the process and procedures implemented by Defendants to receive and administer claims reports was adequate, although the procedures were inadequate, dysfunctional, and simply did not work.

27.

CSP and Top Catastrophe timely and accurately completed adjustment of all claims assigned to it. Despite timely and repeated claims submissions to NCA Group by CSP and Top Catastrophe, NCA Group and ICS, as agents and representatives of St. Paul refused and failed to pay CSP and Top Catastrophe for the adjusting services provided to Defendants.

8

28.

NCA Group and ICS, as agents and representatives of St. Paul, intentionally and without due cause withheld payments to CSP and Top Catastrophe, so as to cause CSP's and Top Catastrophe's inability to fully compensate the professional adjusters working exclusively for CSP and Top Catastrophe on Defendants' claims files.

29.

NCA Group and ICS, as agents and representatives of St. Paul, intentionally and without cause, decided to withhold payments to CSP and Top Catastrophe for the sole purpose of "squeezing out" CSP and Top Catastrophe from the St. Paul claims adjusting process.

30.

At all material times relevant to the handling and processing of the described claims, the fees due to CSP under the CSP Recruiting Agreement were directly dependent on the billings submitted by Top Catastrophe. The actions by the defendants in withholding the payments to Top Catastrophe also eliminated the fees that were due to CSP under The CSP Recruiting Agreement.

*Defendants' Scheme to Eliminate Top Catastrophe*

31.

On or about November 8, 2005, Mark Lozier, Chief Executive Officer of NCA Group, and an officer/director in ICS, organized and conducted a secret meeting with Top Catastrophe adjusters in New Orleans, Louisiana. The meeting had been covertly prearranged by Mr. Lozier, on behalf of NCA Group and ICS, and with the expressed, implied, or constructive authority of St. Paul, to improperly recruit the agents, employees, and adjusters away from Top Catastrophe

9

with the intent to sabotage their employment relationship and contracts with Top Catastrophe in exchange for cash advances, consistent bimonthly payments, and future bonuses.

32.

At the November 8, 2005, meeting, Mark Lozier, as the representative of NCA Group, ICS, and St. Paul, and with the expressed, implied, or constructive authority of St. Paul, intentionally and negligently misrepresented to the agents, employees, and adjusters of Top Catastrophe that they would not be paid any money or any fees on the claims for which they had worked unless they breached their agreements with Top Catastrophe and signed a new contract directly with NCA Group/ICS. In a further effort to induce Top Catastrophe's adjusters, Mark Lozier stated that Top Catastrophe had withheld adjuster fees from individual adjusters relating to submitted claim payments, when in fact NCA Group/ICS had not paid any funds to Top Catastrophe on the claims submitted by the agents, employees, and adjusters of Top Catastrophe.

33.

As a result of the actions taken by NCA Group/ICS through its representative, Mark Lozier, and with the expressed, implied, or constructive authority of St. Paul, almost all of the adjusters left the employ of Top Catastrophe and signed an agreement with NCA Group/ICS for the continued handling of the exact same St. Paul claims for which they were handling through their exclusive employment with Top Catastrophe.

34.

Thereafter, and on November 17, 2005, NCA Group, as an agent and representative of St. Paul and without true cause or supporting basis or reason, terminated the Top catastrophe Adjuster Agreement between NCA Group and Top Catastrophe.

10

35.

The purported basis for the termination of the agreement and contract was stated by NCA Group to be substandard handling of the claims by the Top Catastrophe agents, employees, and adjusters, which were the same agents, employees, and adjusters which NCA Group had met with nine days earlier to contract individually and directly with them.

36.

Upon information and belief, Defendants or an agent or representative thereof, unlawfully entered the offices of Top Catastrophe, which were located within the Eastern District of Louisiana, and knowingly took computers, documents and other reports that they knew or should have known were the property of Top Catastrophe. Defendants used said computers, documents and reports for their own economic gain, thereby causing Top Catastrophe significant loss and damage.

*Defendants' Scheme to Eliminate CSP*

37.

In December, 2005, officers of NCA Group and ICS began discussions and communications directly with the employee/adjusters of CSP without the involvement of the CSP officers. Upon learning of these surreptitious communications between NCA Group and ICS with the CSP adjusters, the officers of CSP directed that NCA Group and ICS "Cease and Desist" the communications with the employee/adjusters.

38.

In direct contravention of the CSP directive to "Cease and Desist" communications with the employee/adjusters of CSP, NCA Group and ICS representatives, with the expressed,

11

implied, or constructive authority of St. Paul, met personally and privately with each adjuster in and around New Orleans, Louisiana, and within the Eastern District of Louisiana, to improperly recruit the agents, employees, and adjusters away from CSP with the intent to sabotage their employment relationship and contracts with CSP in exchange for cash advances, consistent bimonthly payments, and future bonuses.

39.

At the meetings, the representatives of NCA Group and ICS, and with the expressed, implied, or constructive authority of St. Paul, intentionally and negligently misrepresented to the agents, employees, and adjusters of CSP that they would not be paid any money or any fees on the claims for which they had worked unless they breached their agreements with CSP and signed a new contract directly with NCA Group/ICS. In a further effort to induce CSP's adjusters, said representatives stated that CSP had withheld adjuster fees from individual adjusters relating to submitted claim payments, when in fact NCA Group/ICS had not paid any funds to CSP on the claims submitted by the agents, employees, and adjusters of CSP.

40.

As a result of the actions taken by NCA Group/ICS through its officers and representatives, and with the expressed, implied, or constructive authority of St. Paul, all of the adjusters thereafter sent letters, correspondence, and/or emails of resignation from their employ with CSP and signed an agreement with NCA Group/ICS for the continued handling of the exact same St. Paul claims for which they were handling through their exclusive employment with CSP.

41.

12

Case 3:19-cv-00002-RRB   Document 1-13   Filed 01/04/19   Page 16 of 38

At all material times following the storm, NCA Group and ICS worked under the expressed, implied, or constructive authority and direction of the agents, employees, and representatives of St. Paul.

## Count I

### Misrepresentation

42.

Plaintiffs re-allege and adopt by reference in this Count I the allegations and averments contained in the foregoing paragraphs.

43.

In contracting and doing business with CSP and Top Catastrophe, Defendants owed a duty of care to CSP and Top Catastrophe to deal fairly and act in good faith.

44.

Defendants represented to CSP and to Top Catastrophe that St. Paul, NCA Group and/or ICS would honor the respective agreements in good faith with CSP and Top Catastrophe, that NCA Group and ICS were capable of timely administering the insurance claims submittals from CSP and Top Catastrophe, that Defendants computer programs and other processes and procedures put in place by NCA Group and ICS were adequate. All which turned out to be false. Defendants, their agents, representatives and officers conspired to mislead and suppress the truth to CSP and Top Catastrophe, and their employees, agents and representatives, all with the

13

intention of obtaining an unjust advantage for themselves and to cause a loss and inconvenience to CSP and Top Catastrophe.

45.

As a result of Defendants' breach of duty and intentional and negligent misrepresentations and conspiracy, CSP and Top Catastrophe have suffered and will continue to suffer significant damage.

**Count II**

**Unfair Trade Practices**

46.

Plaintiffs re-allege and adopt by reference in this Count II the allegations and averments contained in the foregoing paragraphs.

47.

The actions of Defendants in conspiring with each other to meet the adjuster/employees of the plaintiffs; personally meeting with the adjuster/employees of the plaintiffs in the Eastern District of Louisiana; hiring away the adjuster/employees of CSP and Top Catastrophe; withholding payments from CSP and Top Catastrophe for the specific purpose of sabotaging their business; violated established public policy, are unethical, oppressive, unscrupulous and substantially injurious to the consumers of Louisiana and to Plaintiffs, and are unlawful and unfair trade practices and false, misleading, and deceptive acts and practices, all of which were and are continuing to be in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.

14

48.

As a result of Defendants' unfair trade practices, plaintiffs have suffered and will continue to suffer damages.

## Count III

### Tortious and Intentional Interference with
### Top Catastrophe's Adjuster/Employee Contracts

49.

Plaintiffs re-allege and adopt by reference in this Count III the allegations and averments contained in the foregoing paragraphs.

50.

The actions of the Defendants described above, and in particular, those of Mark Lozier, Chief Executive Officer of NCA Group, constitute a tortious and intentional interference with contract. Defendant, NCA Group, is liable for the acts and omission of its Chief Executive Officer, Mark Lozier, in attempting to interfere with and terminate, and actually accomplishing the termination of Top Catastrophe's contracts with its adjusters/employees.

51.

A contract existed between Top Catastrophe and NCA Group, and Mark Lozier, Chief Executive Officer of NCA Group was fully aware of the contract. Mark Lozier was also fully aware of Top Catastrophe's exclusive agreements with its adjuster/employees.

52.

Without justification or cause, Mark Lozier, as an officer of and on behalf of NCA Group and the other Defendants, and while personally within the Eastern District of Louisiana,

15

intentionally induced the Top Catastrophe adjusters to breach their respective contracts with Top Catastrophe.

53.

As a result of the tortious interference with contract by Defendants, plaintiff, Top Catastrophe, has suffered and will continue to suffer damages.

Count IV

**<u>Tortious and Intentional Interference<br>with CSP's Adjuster/Employee Contracts</u>**

54.

Plaintiffs re-allege and adopt by reference in this Count IV the allegations and averments contained in the foregoing paragraphs.

55.

The actions of the Defendants described above, and in particular, those of the officers of NCA Group, constitute a tortious and intentional interference with contract. Defendant, NCA Group, is liable for the acts and omission of its representatives and officers, in attempting to interfere with and terminate, and actually accomplishing the termination of CSP's contracts with its adjusters/employees.

56.

The officers and representatives of NCA Group were fully aware of the exclusive contract between CSP and its adjuster/employees. CSP also directed NCA Group to not communicate with the adjuster/employees of CSP.

57.

16

Attachment XIII. Page 20 of 38.

Without justification or cause, NCA Group through its officers and directors, and while personally within the Eastern District of Louisiana, and in direct defiance of the cease and desist directive from CSP, NCA Group intentionally induced the adjuster/employees of CSP to breach their contract with CSP, all of which is in violation of the prohibition from intentional interference with a contract.

58.

As a result of the tortious interference with contract by Defendants, plaintiff, CSP, has suffered and will continue to suffer damages.

## Count V

### Conversion

59.

Plaintiffs re-allege and adopt by reference in this Count V the allegations and averments contained in the foregoing paragraphs.

60.

The actions of Defendants in taking and refusing to return personal property in the form of equipment, documents, reports and other items, constitute the tort of conversion. The actions of Defendants in this regard have caused and will continue to cause damage to plaintiffs, Top Catastrophe.

61.

17

Additionally, the actions of the defendants in improperly, unethically, and immorally recruiting the adjusters, agents, and employees of CSP and Top Catastrophe, has resulted in the deprivation of the fees owed to CSP and Top Catastrophe and have now been taken and kept by defendants, constituting a tort of conversion. The actions of the Defendants in this regard have caused and will continue to cause damage to plaintiffs, CSP and Top Catastrophe.

## Count VI

### Breach of Contract and Open Account on Behalf of Top Catastrophe

#### 63.

Plaintiffs re-allege and adopt by reference in this Count VI the allegations and averments contained in the foregoing paragraphs.

#### 64.

NCA Group, on behalf of itself and its customer, St. Paul, and with the expressed, implied, or constructive authority of St. Paul, entered into The Top Catastrophe Adjuster Agreement. The contract was effective beginning September 10, 2005.

#### 65.

Pursuant to The Top Catastrophe Adjuster Agreement, NCA Group contracted for the services of Top Catastrophe to perform the independent adjustment of St. Paul insurance claims assigned to Top Catastrophe by NCA Group, and NCA Group agreed to timely pay Top Catastrophe for the services provided in accordance with the terms of the agreement.

#### 66.

Top Catastrophe provided services to NCA Group and St. Paul in accordance with the terms of The Top Catastrophe Adjuster Agreement. Notwithstanding, NCA Group and St. Paul

18

failed and refused to pay Top Catastrophe for the services rendered and costs advanced for the provision of said services.

67.

Defendants NCA Group and St. Paul received the benefit of the services provided by Top Catastrophe, and despite demand for payment, have refused to pay Top Catastrophe for the services rendered. Said payment for services provided is severely past due.

68.

The actions of Defendants, NCA Group and St. Paul constitute breach of contract, a breach of the duty of good faith and fair dealing, and a violation of the open account statutes, thus entitling Top Catastrophe to recovery of damages, attorneys' fees and costs incurred in connection with the collection and litigation of this claim.

**Count VII**

**Breach of Contract and Open Account on Behalf of Claimserviceprovider, Inc.**

69.

Plaintiffs re-allege and adopt by reference in this Count VII the allegations and averments contained in the foregoing paragraphs.

70.

NCA Group, on behalf of itself and its customer, St. Paul, and with the expressed, implied, or constructive authority of St. Paul, entered into the CSP Recruitment Agreement. The contract was effective beginning September 10, 2005.

19

71.

Pursuant to the CSP Recruitment Agreement, NCA Group contracted for the services of CSP to perform the recruitment and retention of adjusters for the claims of St. Paul, and CSP did in fact recruit and retain Top Catastrophe as requested by NCA Group, and NCA Group agreed to timely pay CSP an override for the services provided in accordance with the terms of the agreement.

72.

CSP provided services to NCA Group and St. Paul in accordance with the terms of the The CSP Recruitment Agreement. Notwithstanding, NCA Group and St. Paul failed and refused to pay CSP for the services rendered and for costs and expense incurred by CSP.

73.

Defendants NCA Group and St. Paul received the benefit of the services provided by CSP, and despite demand for payment, have refused to pay CSP for the services rendered. Said payment for services provided is severely past due.

74.

The actions of Defendants, NCA Group and St. Paul constitute breach of contract, a breach of duty of good faith and fair dealing, and a violation of the open account statutes, thus entitling CSP to recovery of damages, attorneys' fees and costs incurred in connection with the collection and litigation of this claim.

75.

20

Additionally, NCA Group, on behalf of itself and its customer, St. Paul, and with the expressed, implied, or constructive authority of St. Paul, entered into The CSP Adjuster Agreement. The contract was effective beginning October 10, 2005.

76.

Pursuant to The CSP Adjuster Agreement, NCA Group contracted for the services of CSP to perform the independent adjustment of St. Paul insurance claims assigned to CSP by NCA Group, and NCA Group agreed to timely pay CSP for the services provided in accordance with the terms of the agreement.

77.

CSP provided the services to NCA Group and St. Paul in accordance with the terms of The CSP Adjuster Agreement. Notwithstanding, NCA Group and St. Paul failed and refused to pay CSP for the services rendered and for costs and expense incurred by CSP.

78.

Defendants NCA Group and St. Paul received the benefit of the services provided by CSP, and despite demand for payment, have refused to pay CSP for the services rendered. Said payment for services provided is severely past due.

79.

The actions of Defendants, NCA Group and St. Paul constitute breach of contract, a breach of the duty of good faith and fair dealing, and a violation of the open account statutes, thus entitling CSP to recovery of damages, attorneys' fees and costs incurred in connection with the collection and litigation of this claim.

## Count VIII

### Negligence/LSA-CC Art. 2315

80.

Plaintiffs re-allege and adopt by reference in this Count VIII, the allegations and the averments contained in the foregoing paragraphs.

81.

Defendants owed a duty to Top Catastrophe and CSP to act as a prudent and reasonable person would act under the circumstances. Defendants breached their duty to CSP and Top Catastrophe through the acts and omissions which occurred in the State of Louisiana and within this Eastern District.

82.

The actions of Defendants described above are in violation of LSA-CC art. 2315. Said actions resulted and continue to result in damage and economic loss to plaintiffs.

83.

The damages incurred by petitioners include but are not limited to past and future economic loss; past and future loss of income; past and future loss of business reputation; past and future loss of goodwill.

84.

As a result of the actions of the defendants listed above, petitioners, Top Catastrophe, have incurred severe and permanent economic loss and damages, in excess of TEN MILLION AND NO/100 ($10,000,000.00) DOLLARS, in actual damages.

22

85.

As a result of the actions of the defendants listed above, petitioners, CSP, have incurred severe and permanent economic loss and damages, in excess of THREE MILLION AND NO/100 ($3,000,000.00) DOLLARS, in actual damages.

86.

Petitioners are also entitled to recover treble damages, penalties, and attorneys' fees as a result of the actions of the Defendants and as are contemplated and provided under LSA-R.S. 51:1401, *et seq*.

*TREBL <3 X DAMAGE*

87.

All of the actions listed above occurred or were accomplished by the Defendants either within the Eastern District of Louisiana, or resulted in damage and/or injury to plaintiffs' business within the Eastern District of Louisiana.

88.

The facts and circumstances arising from the above allegations involving plaintiffs and defendants arose out of the same transactions and occurrences related to the aftermath of Hurricane Katrina and the claims handling within the State of Louisiana, and particularly within the Eastern District of Louisiana.

89.

Complainants are entitled to and pray for a trial by jury.

WHEREFORE, complainants, Claimserviceprovider, Inc., Top Catastrophe Team Services, LLC, and Edmond Smith, IV, d/b/a Top Catastrophe Team Services, pray that

23

Defendants be duly cited to appear and answer the complaint, and after due proceedings had, there be judgment against defendants, The St. Paul Travelers Companies, Inc., National Catastrophe Adjusters, Inc., d/b/a NCA Group, and Integrated Claims Solutions, Inc., d/b/a ICS, in the amount detailed above and sufficient to cover all damages, together with legal interest thereon, from date of the obligation, attorneys' fees, treble damages, and for all costs of these proceedings.

Complainant further prays for trial by jury and for all general and equitable relief required and/or necessary in the premises.

RESPECTFULLY SUBMITTED,

SHEARMAN~DENENEA, L.L.C,

JOHN H. DENENEA, JR. (#18861)     MAY 11, 2006
4240 Canal Street
New Orleans, Louisiana   70119
Telephone: (504) 304-4582
Fax: (504) 304-4587
Email: jdenenea@midcitylaw.com
Attorneys for Complainants

**PLEASE SERVE THE COMPLAINT ON:**

**The St. Paul Travelers Companies, Inc.**
The Honorable Al Ater
Secretary of State of the
State of Louisiana
3851 Essen Lane
State Archives Building
Baton Rouge, Louisiana  70809

**National Catastrophe Adjusters, Inc., d/b/a NCA Group**
Through its agent for service of process:

24

Brien J. Laurent
150 Loupe Street
Luling, Louisiana 70070


**Integrated Claims Solutions, LLC, d/b/a ICS**
Through the Louisiana Long Arm Statute:
LSA-R.S. 13:3201
L. David Ross
6963 Hillsdale Court
Indianapolis, Indiana 46250

**The Attorney General for the State of Louisiana**
Honorable Charles Foti
Pursuant to LSA-R.S. 51:1401, *et seq.*
By Certified Mail
Post Office Box 94005
Baton Rouge, Louisiana 70804

October 17, 2011

Elizabeth L. White - Clerk
Marion County Circuit Court
200 east Washington Street
City-County Building
Indianapolis, Ind  46204

RE: Smith v Travelers Ins.Co.

Dear Ms. White:

    Enclosed, please find a lawsuit to be filed against the indicated defendants, in the Marion Circuit Court. Since I am not familiar with filing fees, etc.; for the State of Indiana, please advise of those requirements. In addition, please advise as to the manner of service of process...

    This action was previously filed in federal court, but was dismissed due to improper venue. See Claims Service Provider, Inc. v Travelers, No. 06-2475 (E.D.La.).

    Please advise of additional requirements.

Sincerely,

EDMOND H. SMITH, IV
# 07241059
U.S. Penitentiary
P.O. Box   33
Terre Hauate, Ind   47808

STATE OF INDIANA

MARION COUNTY CIRCUIT COURT

CIVIL ACTION NO. _____

EDMOND HUDMOND SMITH IV
P.O. Box  33
Terre Haute, Ind  47808

EDMOND HUDMOND SMITH IV d/b/a
TOP CATASTROPHE TEAM SERVICES

AND

TOP CATASTROPHE TEAM SERVICES, LLC
9395 Burnt Ash Court
Mobile, Alabama 36695                                    PLAINTIFFS


-VS-                        COMPLAINT


THE TRAVELERS INSURANCE COMPANY
One Tower Square
Hartford, Conn  06183

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA
One Tower Square
Hartford, Conn  06183

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT
One Tower Square
Hartford, Conn  06183

TRAVELERS INDEMNITY COMPANY OF AMERICA
ONe Tower Square
Hartford, Conn  06183

TRAVELERS CASUALTY AND SURETY COMPANY
One Tower Square
Hartford, Conn    06183

St. PAUL FIRE & MARINE INSURANCE COMPANY
101 West Burnsville Parkway    Suite 215
Burnsville, Minn   55337

INTEGRATED CLAIMS SOLUTIONS, LLC
One Tower Square
Hartfor, Conn   06183

NATIONAL CLAIMS ADJUSTERS, Inc.
One Tower Square
Hartford, Conn  06183

MARK LOSIER - President
National Claims Adjusters, Inc.
ONe Tower Square
Hartford, Conn   06183

ROBERT BARNETT - President
Integrated Claims Solutions, Inc.
One Tower Square
Hartfort, Conn   06183

PETER GERSIK - Executive President
St. Paul Fire & Marine Insurance Co.
101 West Burnsville Parkway   Suite 215
Burnsville, Minn   55337

RICK CLARK

LINDA SWOPE


LEE ANN CARPENTER


B.J. LYONS
                                                    DEFENDANTS

                ***           ***           ***

STATE OF INDIANA

MARION COUNTY CIRCUIT COURT

CIVIL ACTION NO. _____

EDMOND HUDMOND SMITH, IV
P.O. Box 33
Terre Haute, Ind 47808

EDMOND HUDMOND SMITH, IV, d/b/a
TOP CATASTROPHE TEAM SERVICES

TOP CATASTROPHE TEAM SERVICES, LLC

                                              PLAINTIFFS


-VS-                    COMPLAINT

THE TRAVELERS INSURANCE COMPANY

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

TRAVELERS INDEMNITY COMPANY OF AMERICA

TRAVELERS CASUALTY AND SURETY COMPANY

St. PAUL FIRE & MARINE INSURANCE COMPANY

INTEGRATED CLAIMS SOLUTIONS, LLC

NATIONAL CLAIMS ADJUSTERS, Inc.

MARK LOSIER - President
National Claims Adjusters, Inc.

ROBERT BARNETT - President
Integrated Claims Solutions, Inc.

ꓲꓵꓙꓱꓣ ꓑꓱꓣꓘꓲꓠ - ꓱꓦꓔꓲꓛ

PETER GERSIK - Executive President
St. Paul Fire & Marine Insurance Co.

RICK CLARK

LINDA SWOPE

LEE ANN CARPENTER

B. J. LYONS                                          DEFENDANTS

***          ***          ***

Come the plaintiffs, Edmond Hudmond Smith, IV; Edmond

Hudmond Smith, IV, d/b/a Top Catastrophe Team Services; and

Top Catastrophe Team Services, LLC, and for their respective

causes of action, state as follows:

## COUNT ONE

1. That, based upon agreements made and entered into be-

tween the plaintiffs Edmond Hudmond Smith IV; Edmond Hudmond

Smith IV d/b/a Top Catastrophe Team Services; and Top Catas-

trophe Team Services, LLC, and the defendants, The Travelers

Insurance Company, Travelers Property Casualty Company of Amer-

ica, Travelers Indemnity Company of Connecticut, Travelers In-

demnity Company of America, Travelers Casualty and Surety Com-

pany, Integrated Claims Solutions, LLC, and National Claims

Adjusters, Inc., during calendar year 2005, and immediately

following the catastrophe created by Hurricane Katrina, in the

states of Louisiana, Mississippi, and Alabama, the plaintiffs proceeded to execute the said agreements by fully complying with all the terms and conditions thereof. However, the defendants, and each of them, have refused to compensate the plaintiffs in accordance with the agreements or agreement. That the defendants never informed the plaintiffs that they were dissatisfied with plaintiffs' performance, or that the plaintiffs' had breached their obligations under the parties agreement or agreements. Instead, the defendants simply refused to pay all sums of monies due under the parties agreements or agreement.

2. That the defendants, and each of them, are jointly and severally liable to the plaintiffs, and each of them, in the sum of ONE HUNDRED SIXTY-MILLION Dollars, plus interest at the legal rate allowed, from 2006, until paid.

## COUNT TWO

3. The plaintiffs reallege and assert the allegations contained in paragraph One and Two, of this Complaint, as though fully set forth herein.

4. That the defendants aforesaid, and defendants Mark Losier - President of National Claims Adjusters, Inc., Robert Barnett - President of Integrated Claims Solutions, Inc., Peter Gersik - Executive President of St.Paul Fire & Marine Insurance

Company, Rick Clark, Linda Swope, Lee Ann Carpenter, and
B.J. Lyons, committed acts of theft, breaking and entering,
trespass, fraud, conspiracy, and interference with contractual
relations, by causing the theft of plaintiffs' records, re-
ceipts, contract documents, claims adjusting reports, com-
puters and computer data entry, photographs, video recordings,
audio recordings, proof of claims, employee records and repre-
sentative records, which acts were motivated to prevent the
plaintiffs from collecting on the sums of money due to them
and identified in Count One hereof.

5.  That the aforesaid acts were intentional, and com-
mitted by the defendants from a premeditated design to deprive
the plaintiffs of property and/or money to which they were
legally entitled, thus entitling the plaintiffs to the impo-
sition of punitive damages in a sum of money to be determined
by a trial.

WHEREFORE, the plaintiffs demand:

1.  Judgment against the defendants, The Travelers Insur-
ance Company, Travelers Property Casualty Company of America,
Travelers Indemnity Company of Connecticut, Travelers Indem-
nity Company of AMerica, Travelers Casualty and Surety Com-
pany, Integrated Claims Solutions, LLC, and National Claims
Adjusters, Inc., jointly and severally, in the sum of ONE

HUNDER SIXTY MILLION Dollars, plus interest from 2006, at the legal rate allowed;

2. Judgment against the defendants, jointly and severally, on Count Two, hereof, in a sum of money to be determined by a trial.

3. For any and all other relief to which the plaintiffs may appear entitled, including costs.

EDMOND HUDMOND SMITH, IV
P O Box. 33
Terre Haute, Ind 47808

# NEWS

For immediate release: May 17, 2006

Contact: Amy Whittington (225) 342-5423
Bobby Clark (225) 342-9892

# Consumer Complaints Lead to Probe of Hurricane Claims Handling Practices of Two Insurers

Commissioner of Insurance Jim Donelon announced today the Department of Insurance is set to begin market conduct examinations on two insurers. Donelon says he ordered the exams in response to consumer complaints lodged with the Department of how the companies handled homeowners insurance claims filed as a result of Hurricanes Katrina and Rita.

"Following an internal evaluation, a review of company complaint-to-marketshare ratio and other factors, the Department will initially examine how these two homeowners insurers handled policyholder claims filed in the aftermath of Hurricanes Katrina and Rita," says Donelon.

The two insurers to be examined by the Department are:

- Allstate
- St. Paul/Travelers

Following the market conduct reviews of Allstate and St. Paul/Travelers, Commissioner Donelon says the Department will then examine the Louisiana Citizens Property Insurance Corporation (Citizens). Citizens is the administrator of the FAIR and Coastal Plans, the state's high risk homeowners insurance pools. Commissioner Donelon says the number of companies under examination could increase, based on similar criteria.



-30-

P.O. Box 94214 (1702 N. 3rd St.) Baton Rouge, LA 70804-9214       FAX (225) 342-1893       URL: http://www.ldi.state.la.us